UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE M.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-01163-JMS-MPB ) |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

**ENTRY REVIEWING THE DEPUTY COMMISSIONER'S DECISION**

Plaintiff Michelle M. applied for supplemental security income from the Social Security Administration ("SSA") on January 27, 2014, alleging an onset date of December 8, 2012. [Filing No. 7-2 at 18.] Her application was initially denied on May 27, 2014, [Filing No. 7-4 at 2], and upon reconsideration on December 12, 2014, [Filing No. 7-4 at 13]. Administrative Law Judge Dennis Lyndell Pickett (the "ALJ") held a hearing on August 4, 2016. [Filing No. 7-2 at 36–55.] The ALJ issued a decision on September 27, 2016, concluding that Michelle M. was not entitled to receive supplemental security income. [Filing No. 7-2 at 15.] The Appeals Council denied review on February 23, 2018. [Filing No. 7-2 at 2.] On April 17, 2018, Michelle M. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Deputy Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Deputy Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

# II.
## BACKGROUND

Michelle M. was 43 years of age at the time she applied for supplemental security income. [Filing No. 7-5 at 2.] She has completed at least a high school education and does not have any past relevant work. [Filing No. 7-2 at 26.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Michelle M. was not disabled. [Filing No. 7-2 at 28.] Specifically, the ALJ found as follows:

- At Step One, Michelle M. had not engaged in substantial gainful activity[3] since January 27, 2014, the application date.[4] [Filing No. 7-2 at 20.]

- At Step Two, she had the following severe impairments: "cerebral trauma, affective disorder, attention deficit disorder, anxiety, obesity, and seizures." [Filing No. 7-2 at 20 (citations omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 22.]

- After Step Three but before Step Four, she had the RFC "to perform medium work as defined in 20 CFR 416.967(c) except low stress jobs with no production quotas, simple, routine, unskilled tasks; no exposure to hazards such as heights or dangerous machinery; work that is performed away from the public, and with only occasional interaction with supervisors and co-workers." [Filing No. 7-2 at 23–24.]

- At Step Four, there was no past relevant work to consider. [Filing No. 7-2 at 26.]

- At Step Five, relying on vocational expert ("VE") testimony and considering Michelle M.'s age, education, and RFC, there were jobs that existed in significant numbers in the national

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

[4] Supplemental security income is not compensable before the application date. 20 C.F.R. § 416.335.

economy that she could have performed through the date of the decision. [Filing No. 7-2 at 26–28.]

### III.
### DISCUSSION

Michelle M. makes four assertions of error regarding the ALJ's decision, each of which the Court will consider in turn, as necessary to resolve the appeal.

**A. Whether the ALJ Provided an Adequate Explanation Concerning Listing 12.02**

Michelle M. argues that the ALJ failed to provide an adequate discussion of the evidence that she met or equaled Listing 11.18 for cerebral trauma, evaluated most applicably via the requirements of Listing 12.02 for organic mental disorders. [Filing No. 9 at 21.] In addition to evidence establishing the diagnostic criteria, Michelle M. argues that the ALJ ignored evidence of marked limitations in two domains: activities of daily living and concentration, persistence, or pace. [Filing No. 9 at 22–25.]

The Deputy Commissioner argues that the ALJ's Step Three findings were supported by substantial evidence, that Michelle M. must present evidence demonstrating all of the requirements of the listing, and that the ALJ adequately discussed the evidence of record in support of his conclusion that there was not sufficient evidence of marked limitations in the domains challenged. [Filing No. 15 at 7–15.]

In accordance with the standard of review, the Court declines to reweigh the evidence of record and independently determine the precise severity-level of limitations with the contested domains. However, the Court agrees that the ALJ did not adequately confront conflicting evidence that undermined his conclusions, a pervasive issue with the decision that is not limited solely to the ALJ's discussion of his listing findings. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze

5

only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

For example, in support of his conclusion that "[o]verall, the evidence supports the claimant has no more than mild limitations in her activities of daily living," the ALJ only cited evidence that "[d]uring the psychological consultative examination, the claimant stated she was able to grocery shop, tend to her personal care, and attempt at organize [sic] her bills and home (Ex. 8F at 4)." [Filing No. 7-2 at 23 (citing Filing No. 7-11 at 57 (Michelle M. "reports current daily tasks include 'trying to organize all my bills and my house' . . . ."))] The ALJ did acknowledge significant conflicting evidence elsewhere in the decision, but the Court finds no attempt by the ALJ to explain how that evidence did not support an alternative conclusion. He noted that Samantha Backhaus, Ph.D., after administering the most recent neuropsychological examination in May 2016, concluded that Michelle M. "would require assistance in her activities of daily living, but suggested the claimant might benefit from Vocational Rehabilitation or getting out of her home (Ex. 13F at 103 and 104)." [Filing No. 7-2 at 22 (citing Filing No. 7-14 at 24–25 (The Court notes that Dr. Backhaus did not suggest vocational rehabilitation to return Michelle M. to the competitive workforce, but rather suggested possible participation in "some type of sheltered workshop."))] The ALJ also noted that Michelle M. "has affirmed she lives alone without help, though 'Aspire' came to work with her about two to three days a week to help her with daily chores and organization (Ex. 13F at 106)." [Filing No. 7-2 at 25.] It is not enough for the ALJ to have

mentioned conflicting evidence elsewhere in the decision. The ALJ must provide an analysis somewhere in the decision of the relevant evidence, both supportive and unsupportive, that explains how he reached his material conclusions. Here, Michelle M.'s attempts at self-sufficiency conflict with evidence of her actual capabilities, including that she required outside support to assist her with management of her household and was assessed by the most current examining expert as demonstrating the continuing need for that assistance.

Likewise, the Court finds that the ALJ failed to provide a sufficient analysis of evidence that conflicted with his assessment of Michelle M.'s abilities of concentration, persistence, or pace. The Court will provide examples in connection with Michelle M.'s subsequent assignments of error. On remand, further consideration of the full evidence of record is required at Step Three.

**B. Whether the ALJ Failed to Address Evidence of Sleep Problems, Difficulty Waking, and Daytime Fatigue**

Michelle M. argues that the ALJ did not adequately address significant evidence that she would be unable to maintain employment because of problems sleeping at night, waking up on time, and persisting throughout the day secondary to fatigue. [Filing No. 9 at 26.] Michelle M. also contends that the ALJ failed to include the full limitations supported by the record in his RFC finding or when conveying hypotheticals to the VE to meet his burden at Step Five. [Filing No. 9 at 27–28.]

The Court agrees that the ALJ did not provide an adequate discussion of the relevant evidence concerning Michelle M.'s ability to maintain employment. As noted by Michelle M., a consultative psychologist, Brandon Robbins, Psy.D., examined Michelle M. at the request of the SSA, and provided a medical source statement opining the limitations she would have working:

> Claimant did not present with psychological impairments related to understanding or memory that would impact her ability to maintain employment. Concentration was appropriate during this examination. Claimant's ability to interact with others

7

> is impacted by her mood instability, irritability, and having difficulty with low frustration tolerance. She would likely benefit from low-stress work tasks. Claimant's level of persistence is negatively impacted by fatigue and neurocognitive impairments, and she would find job tasks requiring her to awake early in the morning quite difficult.

[Filing No. 7-11 at 57.] The ALJ summarized Dr. Robbins's medical source statement in the decision. [Filing No. 7-2 at 21.] The ALJ included relevant limitations in his RFC finding that incorporated parts of Dr. Robbins's assessment, including that she would be limited to low stress jobs, with no production quotas, away from the public, and with only occasional interaction with supervisors and coworkers. [Filing No. 7-2 at 23–24.] However, the ALJ did not make any distinction between the type of tasks Michelle M. would be capable of performing and her ability to persist at those tasks over the course of a day (or maintain a specific schedule). The RFC finding fails to account for the relevant distinction contained in Dr. Robbins's assessment. Social Security Ruling ("SSR") 96-8 requires that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7. The ALJ did not provide any analysis of the weight given to Dr. Robbins's opinion. Furthermore, the ALJ did not explain why certain limitations were adopted, while others were not included in the RFC.

Similarly, Dr. Backhaus's most recent neurocognitive assessment included relevant evidence concerning Michelle M.'s ability to maintain a competitive work schedule. Despite the provider calling Michelle M. to remind her of the appointment, she was over an hour and a half late, because she could not sleep related to the stress of the examination and testing, and after getting ready had felt tired and fallen asleep. [Filing No. 7-14 at 27.] She agreed to attempt to make up the time by limiting her lunch break so that the technician would not need to work later.

[Filing No. 7-14 at 28.] However, she returned from lunch late, and despite appearing remorseful and conscientious of the technician's time earlier in the day, when she returned, "[s]he did not even recognize that the technician [who was just across the hall] was not there to work with her. She had no remorse or sense of time thereafter." [Filing No. 7-14 at 28–29.] While Dr. Backhaus cautioned that "results of the neuropsychological testing may in some ways be an underrepresentation of Michelle's optimal level of functions [sic]," Dr. Backhaus noted that "she did seem to put forth adequate effort on embedded tests of effort that are likely to catch someone if they had purposeful attempts of misrepresenting themselves." [Filing No. 7-14 at 31.] Dr. Backhaus concluded:

> A. I do not think Michelle showed a purposeful attempt to misrepresent her abilities or to present herself as more negative than she truly is.
>
> B. I do think that Michelle had a very difficult time being engaged and being able to give her full effort on testing due to significant mood disturbance (severe levels of anxiety and depression), as well as fluctuations with alertness and severe fatigue that affected her ability to maintain alertness throughout the course of the day. There is also some question of whether or not these blank stares [evident during testing] represented any form of complex partial seizures.

[Filing No. 7-14 at 31.] The ALJ again mentioned the examination, including Dr. Backhaus's conclusion that the results might be an underrepresentation of Michelle M.'s optimal level of functioning. [Filing No. 7-2 at 22.] However, the Court finds the ALJ's decision lacking any relevant discussion as to how Michelle M.'s severe impairments may have affected her performance and how the ALJ concluded that her combination of impairments would not result in any need for her to be off-task. There is a distinction between the optimal level of Michelle M.'s cognitive capabilities, which may have been underrepresented by the testing, and her ability to perform on a consistent basis at that level without interruption from her mood disturbance and fatigue. The ALJ here again did not weigh Dr. Backhaus's opinion and did not confront the full

9

import of the opinion in assessing Michelle M.'s RFC. On remand, further consideration is needed of the full evidence of record concerning Michelle M.'s ability to maintain a work schedule and persist at tasks throughout the course of a day, which includes the assessments of Dr. Robbins and Dr. Backhaus. The ALJ's RFC finding should include limitations consistent with the full evidence of record.

### C. Whether the ALJ Properly Considered Michelle M.'s Individualized Response to the Demands of Work (Stress)

Michelle M. further argues that the ALJ did not consider her individualized response to the demands of work (stress), as required by SSR 85-15. [Filing No. 9 at 29.]

SSR 85-15 explains:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

SSR 85-15 (S.S.A. Jan. 1, 1985), 1985 WL 56857, at *6.

The Court agrees that the ALJ's decision does not adequately address the individualized nature of Michelle M.'s combination of impairments. As noted above, Michelle M.'s performance during neurocognitive testing was affected by staring spells, causing breaks in her attention, which were thought to be a possible form of complex partial seizures. The ALJ acknowledged that Michelle M. "has reported in the record that her seizures were exacerbated with stress (Ex. 1F at 11). The residual functional capacity accounts for her allegations in limiting her environment." [Filing No. 7-2 at 25.] Having limited her RFC to low-stress work with limited interaction, the ALJ apparently felt that she may still experience seizures and further provided an environmental

limitation that she should have no exposure to hazards. The limitation appears reasonable. However, the RFC does not account for any limitation she may have in remaining on-task because of these episodes.

Having found a sufficient basis to order remand, the Court declines to reach Michelle M.'s remaining assignment of error. Consistent with this Entry, decisional authority of the Seventh Circuit, and the SSA's own regulations and rulings, the ALJ should confront the full evidence of record, including any opinions or evidence that conflict with the conclusions in the written decision.

## IV.
### Conclusion

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Michelle M.'s benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 12/7/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel